AMERICAN PUBLIC GAS ASSOCIA-
TION and Consumer Federation of
America, Plaintiffs,

v.

FEDERAL ENERGY ADMINISTRA-
TION and Frank G. Zarb,
Defendants.

Civ. A. No. 75–2166.

United States District Court,
District of Columbia.

Jan. 28, 1976.

Charles F. Wheatley, Jr., Stanley W. Balis, Wheatley & Miller, James L. Feldesman, Boasberg, Hewes, Klores & Kass, Washington, D. C., for plaintiffs.

Rex E. Lee, Asst. Atty. Gen., Civ. Div., Dept. of Justice, John N. Hanson (argued the motion), Stanley D. Rose, Attys., Civ. Div., Dept. of Justice, Washington, D. C., for defendants.

MEMORANDUM AND ORDER

SIRICA, District Judge.

The plaintiffs in this case, the American Public Gas Association and the Consumer Federation of America, are two organizations representing purchasers of natural gas. They seek an injunction preventing further publication and distribution by the Federal Energy Administration ("FEA") of copies of a booklet it has recently written entitled *The Natural Gas Story*. The booklet, they claim,

is an attempt by the FEA to influence Congress either directly or indirectly to pass legislation deregulating prices in the natural gas industry. More specifically, they claim that it is an attempt to get Congress to pass a deregulation bill which Congress appears likely to vote on within the next few weeks. This attempt, they argue, violates 18 U.S.C. § 1913 (1970), which generally prohibits federal officials from using federal funds directly or indirectly to conduct activities "intended or designed to influence in any manner a Member of Congress, to favor or oppose . . . any legislation or appropriation by Congress . . ." unless authorized by Congress to do so.

This Court has some doubts about its power in a case such as this to add the deterrent effect of judicial contempt to the deterrent effect of criminal sanctions which Congress has chosen to provide. Nevertheless, because the Court has concluded that enjoining further distribution of this pamphlet by the FEA would not be in the public interest, it does not decide that issue.

The government concedes that *The Natural Gas Story* is biased in favor of deregulation. Indeed, it must, since at page 12 the booklet states flatly that "[t]he most effective way to [increase the supply of natural gas] is for Congress to deregulate the price of new natural gas at the wellhead." It may also be conceded that the FEA's intent in writing and distributing copies of this booklet has been, at least in part, to influence Congress, however indirectly, to pass deregulation legislation, and that this constitutes a violation of the statute for injunctive purposes.

The question, then, is simply one of the Court's ability to fashion an appropriate remedy which comports best with the public interest. There are a number of possible solutions at hand. The Court might, for example, consider ordering the FEA to attempt to retrieve those copies of the pamphlet it has already distributed. But there are a number of problems with this and it fairly clearly could only hope to be marginally helpful. The Court might also consider ordering the FEA to issue some sort of corrective statement. But that might simply draw attention to the biased portions of the booklet without adequately offsetting their effect. In the end, the plaintiffs have decided to request only that the FEA be enjoined from distributing copies of the booklet in the future. The Court will respect that decision.

In determining whether the public interest demands that such an injunction be issued, this Court must look not only at the intent of the FEA in writing and distributing copies of the booklet, but also at the likelihood that, without the injunction, what it has intended will in fact be realized. This particular inquiry is narrowed somewhat by the facts that already the FEA has distributed over 8,000 copies of the booklet to numerous federal agencies, private organizations, and citizens, including 41 copies to various congressional offices which have expressed an interest to the FEA in receiving its publications, and that the FEA does not plan to make any more unsolicited distributions. Therefore, the plaintiffs have been left to argue that an injunction against further unsolicited distributions is still necessary to avoid some additional influence that this additional distribution might produce on a congressman to vote in favor of the deregulation of natural gas prices.

In their behalf, the plaintiffs argue, first, that a congressman might hear about *The Natural Gas Story* from someone who has read it, become interested in it, be unable to obtain it readily from other sources, obtain a copy from the FEA, read it and be influenced by it. Even assuming that 18 U.S.C. § 1913 gives the Court the authority to prevent the congressman from obtaining a copy of the pamphlet under these circumstances, and assuming further that a congressman might be unable to obtain the information contained in the booklet quite easily elsewhere, the Court finds it highly unlikely that *The Natural Gas Story* would generate this kind of interest. It is an obviously superficial treat-

ment of the natural gas problem which discusses, in 18 pages (with pictures and a chart), the history and uses of natural gas, the "approaching gas crisis," and possible short and long term solutions, including not only deregulation of prices but also conservation and the development of alternative sources of gas. It is hardly the type of document that would strike a person as being particularly authoritative on the question of the deregulation of natural gas prices; it adds nothing new to that debate.

For the same reasons, it appears highly unlikely, even if a congressman did read the pamphlet, that he would be measurably affected by the allegedly biased statements.

But the plaintiffs also argue that others may hear of *The Natural Gas Story*, request a copy from the FEA, read it, be influenced by it, and contact their congressman to express their views in favor of deregulation; this, in turn, plaintiffs argue, might influence at least one congressman to vote in favor of deregulation. But once again, even assuming that these persons could not readily find an alternative source for what is contained in the booklet, the Court finds that the pamphlet is unlikely to generate this kind of response. Given that the pamphlet is somewhat less than authoritative in appearance and nowhere mentions that legislation to deregulate the price of natural gas is pending or soon will be pending in Congress, it simply is not of the type likely to induce persons to contact their congressmen. In addition, whatever minimal danger of this that exists is further decreased by the fact that the *maximum* additional distribution the FEA has planned is somewhat fewer than 17,000 copies.

In short, it appears highly unlikely that permitting further unsolicited distribution of this pamphlet would have any significant influence on a member of Congress in his consideration of the pending deregulation bill or any future bill of a similar nature.

Even conceding all this, though, the plaintiffs argue that the unusual posture of the bill presently before Congress justifies the utmost precautions and therefore an injunction should still be granted. Apparently, the bill is likely to be voted on by the House without benefit of committee hearings or a report. Therefore, the plaintiffs claim, the booklet might have substantially more influence on Congress than it otherwise might. Although this does change the case somewhat, it does not change it very much. With a bill of this importance, congressmen are likely to request information from all quarters. Amidst the torrent of information likely to come forth from such requests, this 18-page booklet appears small indeed.

On the other hand, the government has pointed out that the FEA is under a duty to make public

> whatever reports and summaries are necessary to keep the public fully and currently informed as to the nature, extent, and projected duration of shortages of energy supplies, the impact of such shortages, and the steps being taken to minimize such impacts. [15 U.S.C. § 773(a) (Supp.1974)]

Much of what appears in *The Natural Gas Story* comes under this duty and has no lobbying intent or effect. To enjoin distribution of the entire pamphlet, therefore, would be to impede substantially the task of the FEA under this provision of the act in order to attempt to minimize the presumed slight violation of the statute and the slight actual effect that the violation might have. The public interest, in this Court's view, argues strongly against doing so.

█ It is, of course, possible to order the FEA to excise the alleged objectionable portions of the booklet before distributing more copies. But this Court feels that the plaintiffs have not shown that the injury they and the public are suffering or might possibly suffer is so significant as to justify this additional expenditure of public monies.

Accordingly, it is this 27th day of January, 1976,

Ordered that plaintiffs' petition for an injunction be, and the same hereby is, denied; and it is

Further ordered that the case be, and the same hereby is, dismissed.